TARA K. MCGRATH
United States Attorney
MICHAEL A. DESHONG
California State Bar No. 301041
Assistant United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-9290
Email: Michael.Deshong@usdoj.gov

Attorneys for the Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 23-cr-2330-JES |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER** |
| v. | |
| ARMANDO ESCARCEGA VALDEZ, | Hearing: December 15, 2023 |
| Defendant. | Time: 9:00 a.m. |
| | Courtroom: 4B |
| | **Honorable James E. Simmons, Jr.** |

Defendant Armando Escarcega Valdez's life is in Mexico. He is an attorney in Mexico City and, as of 2019, he had a wife who lived with him there. According to him he has three children, who presumably also reside in Mexico. His 2016 arrest on fraud charges occurred in Mexico City and his 2017 arrest for aggravated extortion involving a firearm also occurred in Mexico City. The evidence suggests he was in Mexico City in 2019 when he applied online for a visa to enter the United States. While applying for the visa, he falsely claimed that he had never been arrested. In other words, he made a false statement to obtain his visa.

On January 4, 2023, Defendant used that visa to enter the United States via a pedestrian lane. He remained in the United States past the maximum six-month visit period and was still here when he was arrested on October 16, 2023. To understand why Defendant suddenly left the city where his career and his immediate family were located and entered

the United States with only the items he could carry with him, the Court must look at another series of events.

On December 15, 2022, gunmen on a motorcycle attempted to murder Ciro Gomez Leyva, a prominent journalist in Mexico City. The attempted murder attracted much attention. The Government believes Defendant's indefinite trip to the United States on January 4, 2023, was an attempt to avoid prosecution for his involvement in the shooting. On January 11, 2023—only a week after Defendant left the country—multiple people were arrested for their involvement in the shooting. On January 30, 2023, the Mexican Government issued a warrant for Defendant's arrest in connection with crimes against Ciro Gomez Leyva. On February 17, 2023, Interpol issued a Red Notice alerting law enforcement that Defendant was being sought in connection with the shooting. Defendant's sudden desire to relocate to the United States in early of January of 2023 was not a coincidence. It was an attempt to flee prosecution. In the process, Defendant demonstrated a willingness to flee from the community where he had much deeper ties than he does to any community in the United States.

Now, Defendant asks this Court to release him and trust that he will not flee again. Defendant asserts that his ties to Delano, California—superficial ties in comparison to his ties to Mexico—along with a desire to seek political asylum are sufficient to ensure his appearance. The United States disagrees and asks this Court to reject his request and affirm the detention order.

## I.

## STATEMENT OF THE CASE

On May 19, 2023, the United States filed a sealed complaint charging Defendant with using a visa that he knew was obtained by a false statement or fraud. ECF No. 1. After searching for Defendant for several months, he was arrested in the Eastern District of California on October 16, 2023, and had his initial appearance in this District on October 19, 2023. ECF No. 8.

At the initial appearance, the Government moved to detain Defendant based on both risk of flight and danger to the community. ECF No. 10. A detention hearing was held before United States Magistrate Judge Burkhardt on November 7, 2023, and Defendant was ordered detained. ECF Nos. 16–17. Defendant's motion for reconsideration follows.

## II.
## STATEMENT OF FACTS

### A. Defendant's Multiple Arrests in Mexico

#### 1. 2016 Fraud Arrest

In 2016, Defendant was arrested and prosecuted in relation to fraud charges in Mexico City, Mexico by the *Fiscalia General de Justicia* (FGJ). Defendant was not ultimately convicted of the charges. The United States is waiting to receive additional information from the Mexican Government regarding the underlying facts of this case.

#### 2. 2017 Aggravated Extortion Arrest

On January 26, 2017, law enforcement in Mexico City was contacted about a kidnapping near a coffee shop. Upon arriving, they spoke with a manager who said a customer noticed that four people left the location carrying a person in the middle of them and that one of the four people had a gun. At some point, a 76-year-old man, H.F.C.V., called law enforcement and said he received calls threatening to hurt his family and demanding $200,000 (presumably pesos). H.F.C.V. told law enforcement the area where the extortioners would be. Law enforcement then encountered and detained four occupants of a black Jeep Cherokee, bearing Mexican license plate 299-ZTD and registered under Defendant's name at an address in the Nueva Vallejo portion of Mexico City that Defendant would later use on his visa application. Defendant was identified as one of the four occupants inside the Jeep and a Colt pistol was recovered from one of the other occupants. Defendant was not ultimately convicted of the charges.

### B. Defendant's 2019 Visa Application

On October 10, 2019, the United States Department of State received a DS-160, Online Nonimmigrant Visa Application (barcode (#AA009CHG1Z) bearing the name

3

"Armando Escarcega Valdez," his date of birth in the year 1969, and his photograph. His name, date of birth, and home address, all matched the individual arrested for aggravated extortion in Mexico City in 2017. He further identified himself as a lawyer that is bilingual in English and Spanish. He also indicated he had a spouse that resided with him in Mexico City.

Most importantly, he was asked "Have you ever been arrested or convicted for any offense or crime, even though subject of pardon, amnesty, or other similar action?" Defendant answered "no" to this question despite having been arrested on two separate occasions in Mexico—regardless of whether he was ultimately convicted.

## C.   December 15, 2022: Attempted Assassination of Ciro Gomez Leyva[1]

On the evening of December 15, 2022, gunmen on a motorcycle attempted to murder one of Mexico's most prominent news anchors, Ciro Gomez Leyva.[2] On January 11, 2023, eleven individuals were arrested in connection with the attack.[3]

At some point during the investigation into the attempt on Mr. Gomez Leyva's life, Mexican law enforcement developed sufficient information linking Defendant to the crime that, on January 30, 2023, a warrant was issued for his arrest on charges that translate as "criminal conspiracy committed against C.G.L., as well as the probability that the accused, Armando Escarcega Valdez, committed it as a material co-conspirator." The arrest warrant is currently outstanding. On February 17, 2023, Interpol published a Red Notice to alert law enforcement around the world to locate Defendant. The Red Notice described Defendant as "the leader of a criminal organization related to various criminal activities such as homicide, commercial extortion and drug dealing."

---

[1] While Defendant is not charged with this offense in the present case, a warrant for his arrest has been issued in Mexico. The facts surrounding this event are largely obtained from news reports. The United States believes these circumstances are highly relevant for the purposes of evaluating Defendant's incentive to flee.

[2] *Mexico News Anchor Survives Shooting Amid Surge in Violence Against Journalists*, THE GUARDIAN, https://www.theguardian.com/world/2022/dec/16/mexico-news-anchor-shooting-ciro-gomez-leyva-journalist (last accessed on Dec. 8, 2023).

[3] *11 People Arrested After Attempted Shooting of Mexican Journalist*, Reuters, https://www.reuters.com/world/americas/11-people-arrested-after-attempted-shooting-mexican-journalist-2023-01-11/ (last accessed on Dec. 8, 2023).

4

**C.      January 4, 2023: Defendant Enters the United States**

On January 4, 2023, at around 9:44 a.m., Defendant used his visa to enter the United States at the Otay Mesa Port of Entry, within the Southern District of California. After entering the United States on this date, Defendant never returned to Mexico and remained in the United States until he was arrested on October 16, 2023—over ten months later. Previously, Defendant generally only visited the United States for a few days at a time. For example, he entered the United States on February 17, 2022, and then left on February 20, 2022; entered on April 3, 2022, and left on April 6, 2022; entered on June 19, 2022, and left on June 22, 2022. A ten-month stay in the United States also violated the terms of his nonimmigrant visa, which limits stays in the United States to six months.

# III.

# ARGUMENT

Defendant's motion should be denied because the preponderance of the evidence demonstrates that he poses a serious flight risk. United States Magistrate Judge Burkhardt applied the proper legal framework at Defendant's detention hearing, appropriately evaluated the circumstances of the case, and correctly concluded the § 3142(g) factors weigh in favor of detention. The United States asks this Court to affirm Judge Burkhardt's carefully considered order that Defendant be detained.

**A.      Legal Standard**

This Court has jurisdiction to review a magistrate judge's detention order pursuant to 18 U.S.C. § 3145(b) and must review the detention order *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990); *United States v. Turijan-Cruz*, No. 3:20-CR-0416-H, 2020 WL 12182469, at *1 (S.D. Cal. Apr. 7, 2020). A district court is not required to "start over in every case" or "proceed as if the magistrate's decision and findings did not exist." *Koenig*, 912 F.2d at 1193. Rather, the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

Title 18 U.S.C. § 3142 governs bail determinations. The statute provides: "If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). In assessing a motion to detain, the Court must conduct "an individualized evaluation" guided by the factors articulated in 18 U.S.C. § 3142(g). *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

**B.    The § 3142(g) Factors Weigh in Favor of Detention**

    1.    The Nature and Circumstances of the Offense

The Court must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The enumerated offenses are not dispositive of bail or detention.

The nature and circumstances of the instant offense favor detention. Defendant falsely stated that he had never been arrested when he applied for a visa to enter the United States. Defendant used that visa to enter the United States shortly after a violent criminal event in Mexico that he is alleged to have participated in. He then violated the terms of his visa—and the immigration laws of the United States—by overstaying the maximum stay permitted by his visa. Defendant fraudulently obtained and misused a visa to avoid prosecution in a foreign jurisdiction and that should weigh in favor of detention.

2. <u>The Weight of the Evidence</u>

Although "the least important" factor, *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986), the weight of the evidence nonetheless remains a consideration. Courts do not examine the weight of the evidence to make a pre-trial determination of guilt, but rather to assess Defendant's risk of failing to appear. *Id.* In other words, a defendant would be more likely to remain and fight charges if the evidence against him or her is weak, and more likely to flee prosecution when the evidence is strong and the perceived likelihood of a conviction is higher.

In this case, the weight of the evidence is strong. Defendant has been arrested twice and he denied it on his visa application. (ECF No. 1). At the time of Defendant's 2017 arrest, he and his co-defendants were arrested in a vehicle registered under his name at the same address he listed on his 2019 visa application, and he was photographed. Defendant's border crossing records indicate he used the visa to enter the United States on January 4, 2023. The weight of the evidence is strong and weighs in favor of detention.

3. <u>Defendant's History and Characteristics</u>

In evaluating whether a defendant's history and characteristics weigh in favor of detention, the Court considers factors including the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *See* 18 U.S.C. § 3142(g)(3)(A).

Here, Defendant's history and characteristics weigh *strongly* in favor of detention. As a preliminary matter, a key point in analyzing these characteristics is to ask: What binds Defendant to this community. What would he be leaving behind if he chose to flee rather than face the charges? As to this defendant, the answer to both those questions is virtually nothing. With so little to connect him to San Diego, Delano, or any community in the United States, he has little incentive to remain and face the charges. His visa has been revoked and

he will be placed in removal proceedings to Mexico at the conclusion of this case, regardless of the outcome.[4]

While Defendant does not have roots in the United States, the record reflects that Defendant has fairly extensive roots in Mexico. As his counsel noted during the hearing, he is an attorney and he has three children. According to his 2019 visa application, he also had a wife. All of those are things that bind a person to a community and provide an incentive not to flee prosecution because doing so would require abandoning their family, their career, and their life. The key distinction in Defendant's case is that he is an attorney *in Mexico*, he has a wife *in Mexico*, and he has three children *in Mexico*. All of the ties that bind him are in a foreign country.

Defendant's extensive roots in Mexico should factor heavily into the analysis because the evidence supports an inference that Defendant already demonstrated a willingness to abandon all of his ties to Mexico to flee prosecution. Prior to January of 2023, it does not appear that Defendant ever spent a single six-month period in the United States. His border crossing records tend to show that he generally came to the United States for relatively short two- to three-day visits before then. This begs the question as to what caused Defendant to drastically alter his travel pattern. The chronology suggests an obvious answer.

On December 15, 2022, individuals attempted to murder Ciro Gomez Leyva in Mexico. On January 4, 2023, Defendant entered the United States and never returned. On

---

[4] While a court may not detain a defendant based solely on alienage, it can be considered along with other factors. *See Santos-Flores*, 794 F.3d at 1090 ("Alienage may be taken into account, but it is not dispositive."). Courts in this district regularly find immigration consequences relevant to the risk-of-flight analysis. *See, e.g., United States v. Contreras-Avalos*, No. 22-mj-4180-DDL, 2022 WL 17652836, at *3 (S.D. Cal. Dec. 13, 2022) ("The record indicates that Mr. Contreras-Avalos is a citizen of Mexico with no ability to lawfully remain in the United States. It is a virtual certainty that he will be removed to Mexico at the conclusion of the case. As such, he has a strong incentive to abscond to avoid removal."); *United States v. Osuna-Villa*, No. 18-cr-3979-WQH, 2018 WL 9961830, at *2 (S.D. Cal. Oct. 26, 2018) (holding that detention was proper given defendant's criminal history, "lack of legal status," and because "Defendant has a strong motive not to appear in order to avoid a significant period of incarceration and certain deportation.); *see also United States v. Stepanyan*, No. 15-cr-00234-CRB, 2015 WL 4498572, at *4 (N.D. Cal. July 23, 2015) (noting that "immigration consequences are relevant to a defendant's 'risk of flight' in the bail determination, as that phrase has always been understood: that a defendant could, of his own volition, abscond to escape the consequences of prosecution, perhaps made more onerous by the risk of deportation").

January 11, 2023, eleven individuals involved in the attempted murder were arrested. On January 30, 2023, Mexico issued a warrant for Defendant's arrest in connection with the crimes against Ciro Gomez Leyva. The reasonable inference is that Defendant was conscious of his guilt and feared arrest. Thus, he did not come to the United States on January 4, 2023, for "a visit"; he came here to flee from prosecution in Mexico. His motivation to flee was, and is, so strong that he was willing to abandon his career as an attorney in Mexico, his wife and three children in Mexico, and the life he built over 54 years in Mexico to flee to the United States. All the factors that are typically considered sufficient to mitigate the risk of flight under Section 3142(g)(3)(A).

In this case, Defendant was arrested *after* he had already chosen to flee and those actions weigh heavily against granting him bond. He left the country where he had spent 54 years, grown a family, built a career as a lawyer, and he abandoned all of it to flee prosecution. Yet now he asserts that two brothers he has only briefly visited from time and a residence from January to October of 2023, are sufficient to assuage any concerns that he might flee again. The Court should reject his argument that his *de minimus* ties to the United States are sufficient to mitigate his high risk of flight and affirm Judge Burkhardt's order that he be detained pending trial.

In the detention hearing, Defendant attempted to claim the charges against him in Mexico were politically motivated and his fear of returning indicated he was *not* a risk of flight. Such reasoning assumes that Defendant can only flee to Mexico. That assumption is incorrect. Defendant could easily flee anywhere within the United States. In fact, if Defendant is determined *not* to return to Mexico as his counsel has asserted, then fleeing within the United States would be his most logical option. Otherwise, if he remains and faces the charges, he will eventually be sent to immigration custody to be placed in removal proceedings—regardless of the outcome of this case. Accordingly, fleeing prosecution is his *only* choice to avoid being return to Mexico.

Defendant has also claimed he has an incentive to remain and face these charges because he wants to claim political asylum in the United States. This after-the-fact

justification that is inconsistent with Defendant's prior actions. Defendant could have sought asylum at the time he entered the United States in January of 2023. He did not. He could have sought asylum in July of 2023 when the maximum six-month say for his visa came to an end. He did not. The reason he did not take these opportunities to claim asylum is because Defendant did not come to the United States to seek asylum. He came here to flee from prosecution. The Government is highly concerned that he will do the same thing in this case if given the opportunity and that no condition or combination of conditions can sufficiently mitigate that risk, including the measures suggested by Defendant. Additional restrictions such as GPS monitoring or home detention are only easily evaded by someone who is willing to cut off the monitoring device and flee. Accordingly, the Government asks the Court to affirm the order detaining Defendant pending his trial.

## IV.
## CONCLUSION

This case presents an atypical set of facts. However, the record supports the inference that Defendant fled from Mexico to hide in the United States to avoid his impending arrest for serious, violent crimes in Mexico. He fled the place where he had a career and close family to tie him the community and tried to hide in Delano, California where his brothers reside. He now tries to claim that his 10-month residence in Delano and his desire to not return to Mexico support granting him a bond and releasing him from custody. They do not. In light of his recent actions and the serious additional charges he faces, there is no condition or combination of conditions sufficient to assure his appearance. The United States asks the Court to affirm the detention order.

DATED: December 8, 2023

Respectfully submitted,

TARA K. McGRATH
United States Attorney

/s/ Michael A. Deshong
MICHAEL A. DESHONG
Assistant United States Attorney